# DECLARATION

I, Chaz Norman, a Task Force Officer with the United States Drug Enforcement Administration (DEA), hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief.

1. I am an investigative law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18.

2. I have been a duly deputized Task Force Officer for the DEA since April 2020, and am currently assigned to the Greensboro Resident Office. My responsibilities include investigating criminal violations of the federal Controlled Substances Act and related offenses. I have been a sworn Police Officer with the Lexington Police Department (LPD) since January of 2016. Since January 2019, I have been a Detective with the Vice/Narcotics Unit. I have been involved in hundreds of drug investigations and cases at local, state, and federal levels. Through my training and investigative experience, I have gained significant knowledge in the field of drug law enforcement. I have learned the techniques and methods utilized by drug traffickers in negotiating, procuring, packaging, financing, and distributing illegal drugs. I am familiar with the methods used by drug traffickers to maintain records manufactured from the sale of illegal controlled substances and the method in which they launder and conceal the proceeds from the sale of illegal controlled substances.

GOVERNMENT EXHIBIT A

3. The facts and circumstances set forth in this Declaration are based on information provided by other law enforcement officers and my own personal knowledge and experience. Because this declaration is being submitted for the limited purpose of establishing probable cause, I am not including all the facts and information that I have learned about or obtained during the course of this investigation.

4. Based on the facts set forth below, there is probable cause to believe that the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851, which was seized from the possession of Argenis Samuel RIVERA-Alicea (RIVERA) on March 8, 2021, is subject to forfeiture pursuant to 21 U.S.C. § 881(a).

5. In August 2020, Davidson County Sheriff's Department (DCSO) investigators with the Vice/Narcotics Unit received information from a Confidential Reliable Source (CRS) concerning narcotics trafficking by a man named "Sammy Sosa" who was identified as a methamphetamine distributor who dealt in large quantities of methamphetamine throughout Davidson County, North Carolina, and surrounding counties.

6. Investigators learned that the individual known as "Sammy Sosa" operated multiple vehicles including a yellow Mazda 6 sedan and a blue Chevrolet Camaro SS convertible vehicle, which was later identified as having VIN 1G1FH3D79G0183851.

7. The CRS stated that the individual known as "Sammy Sosa" lived in the area of High Point, North Carolina, but could not provide the address or true name of the individual.

8. The information provided by the CRS in this matter is believed to be

truthful and reliable. The CRS in the investigation is familiar with the appearance of methamphetamine as well as how methamphetamine is packaged and distributed from their previous involvement with illegal narcotics and/or controlled substances.

9. In January 2021, DCSO detectives met with the CRS who informed them that "Sammy Sosa" was living at 330 Elwin Circle, Lexington, North Carolina. The CRS provided further information that the actual surname of the individual known as "Sammy Sosa" was Rivera-Alicea. Through records checks, DCSO detectives located a subject by the name of Argenis Samuel RIVERA-Alicea, who had registered a 2003 Mazda 6 sedan and a 2016 Chevrolet Camaro SS convertible vehicle in his name. When shown a photograph of RIVERA by DCSO detectives, the CRS identified RIVERA as being the CRS knew as "Sammy Sosa."

10. At the end of January 2021, detectives with the DCSO Vice/Narcotics unit met with a second Confidential Source (CS2) who stated that, within the last month, CS2 had been in a yellow Mazda 6 sedan with a male individual that CS2 knew as "Sammy Sosa" and saw a large distributable amount of methamphetamine, a large sum of U.S. Currency, and several firearms located in the vehicle. CS2 was shown a photograph of RIVERA and identified the subject in the photograph as "Sammy Sosa." CS2 told detectives that RIVERA had multiple vehicles including the yellow Mazda 6 sedan and a Chevrolet Camaro SS convertible. CS2 also confirmed that the man CS2 knew as "Sammy Sosa" was currently staying in a trailer located on Elwin Circle in Lexington, North Carolina.

11. In February of 2021, DEA Task Force Officer (TFO) Jonathan S. "Shawn"

3

Wooten received information from Detective Chris Bryant of the DCSO Vice and Narcotics Unit concerning the sale and distribution of methamphetamine by RIVERA.

12. TFO Wooten assisted the DCSO with physical surveillance, phone call analysis, and electronic device GPS and GEO-Location assistance.

13. During the week of February 8, 2021, DCSO Vice/Narcotics detectives began conducting physical and mobile surveillance on RIVERA. Investigators learned that RIVERA operated multiple vehicles including a yellow Mazda 6 sedan, a blue Chevrolet Camaro SS convertible, a blue GMC Rollback tow truck, a black Honda Civic, a red and white motorcycle, a silver Ford Mustang coupe, and a silver Dodge Neon sedan.

14. During surveillance, detectives observed a blue Honda Civic arrive at 330 Elwin Circle, Lexington, NC, stay for approximately eight (8) minutes and leave. A patrol deputy observed a traffic violation and conducted a traffic stop on this vehicle. During the traffic stop, deputies located a small amount of methamphetamine along with a distributable amount of marijuana.

15. Following this, detectives observed a vehicle arrive at 330 Elwin Circle, Lexington, NC, stay for approximately ten (10) minutes and leave. A patrol deputy observed a traffic violation and conducted a traffic stop on the vehicle. During the traffic stop, deputies located a small amount of methamphetamine. During the traffic stop, the subject stated against their penal interest that they had purchased methamphetamine on several occasions from "Sammy" at 330 Elwin Circle, Lexington, NC.

16. Detectives met with two additional confidential sources (CS3 and CS4).

CS3 stated that they had purchased methamphetamine from RIVERA at 330 Elwin Circle. CS3 informed detectives that they would contact RIVERA by telephone prior to the purchases. Detectives were able to verify this by observing messages on CS3's telephone. CS4 stated that they had purchased methamphetamine in the past from RIVERA and would contact him by telephone and Facebook prior to making the purchase.

17. On March 8, 2021, Detective Bryant received information that RIVERA was traveling to High Point, NC, to pick up a large amount of narcotics, driving the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851. RIVERA is the registered owner of the vehicle. Investigators established mobile surveillance and located RIVERA traveling south on U.S. Highway 29/70 in Davidson County, NC. DCSO Detectives also conducted surveillance at the residence of 330 Elwin Circle, Lexington, NC.

18. DCSO Sergeant J. Barber checked the area of Lexington, North Carolina, and was traveling on Business 29/70 South at the merge from E US Hwy 64 and Business 29/70 South, when he observed a Chevrolet Camaro vehicle fitting the description of RIVERA's vehicle traveling in front of him, in the right lane.

19. Sergeant Barber saw the Camaro signal and change lanes from the right lane to the left in front of another vehicle that was one car length away. The cars were traveling at approximately fifty-five (55) miles per hour. After changing lanes, the driver of the Camaro abruptly braked three times in front of the other vehicle that the driver had just passed causing the other vehicle to brake sharply to avoid an accident. There

were no other vehicles in front of the Camaro at the time of its braking.

20. Sergeant Barber activated his blue lights and got behind the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851. The driver pulled to the right and slowed down to approximately 40 miles per hour and came to a stop just short of the Winston Road exit.

21. Sergeant Barber approached the driver's door of the Camaro, identified himself, and advised the driver that he had stopped him for an unsafe movement. The driver identified himself as Argenis Samuel RIVERA-Alicea. Sergeant Barber requested RIVERA's license. RIVERA stated that he did not have one, and provided his full name and birth date. A female passenger, later identified as April Nicole Newsome, was in the front passenger seat of the vehicle. Sergeant Barber observed that Newsome's eyes were red and it appeared she had been crying. Sergeant Barber asked Newsome if she was okay, to which she replied that she was fine and that she had not been crying.

22. Sergeant Barber returned to his patrol car to check RIVERA and Newsome's information and to call for a K9 unit to assist. DCSO Deputy A.S. Reudelhuber responded to the scene with his Canine Arya.

23. Sergeant Barber approached the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851. Sergeant Barber asked RIVERA to step out of the vehicle and speak to him. RIVERA complied. Sergeant Barber asked RIVERA for consent to search the vehicle. RIVERA stated that he would not give consent to search. Sergeant Barber advised RIVERA that he was going to conduct a free air K9 sniff of his vehicle. Sergeant Barber then asked Newsome if she would step out of the vehicle, and

6

she complied. Deputy Reudelhuber then patted down RIVERA for weapons. Both RIVERA and Newsome sat on the guardrail behind the vehicle, for safety.

24. Deputy Reudelhuber and Canine Arya successfully completed the 120-hour Dual Purpose Handler School held from July 27, 2019, to August 7, 2019, at High Point Canine Solutions, LLC. They received their K9 in-house certification from DCSO on August 21, 2019. Canine Arya proved that she could reliably use her olfactory sense to locate narcotic training aids of actual controlled substances which include heroin, cocaine, marijuana/hashish, and methamphetamines. Deputy Reudelhuber and Canine Arya certify annually as a Narcotics Detection Team with the North American Police Working Dog Association, the most recent certification being on September 29, 2020. This certification is valid for one year from the date of issuance.

25. Canine Arya was initially trained to "Aggressively Alert" by scratching when the odor of narcotics for which she is trained is detected. Deputy Reudelhuber has also trained Canine Arya to "Passively Alert" after detecting the odor of certain narcotics. This "Passive Alert" consists of a physical reaction which ultimately ends in her coming to a sitting position when detecting the odor of such narcotics. Canine Arya undergoes frequent training for the detection of concealed controlled substances, which is on-going in order to ensure her proficiency.

26. Deputy Reudelhuber gave Canine Arya the command to sit at the back right side of the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851. Canine Arya complied. Deputy Reudelhuber gave Canine Arya the command to search. Canine Arya began at the rear right side of the vehicle and

7

continued to the front of the vehicle. While doing so, Canine Arya exhibited a change in behavior when she came to the right rear quarter panel of the vehicle, where the panel meets the passenger door. When she came to the passenger door, she started scratching very hard and biting the door handle of the vehicle, indicating that she had located the odor of narcotics.

27. Following Canine Arya's search of the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851, Deputy Reudelhuber searched the vehicle, beginning with the passenger side. Deputy Reudelhuber discovered a backpack containing men's clothes on the passenger side floorboard. Newsome advised that the backpack was hers. Deputy Reudelhuber inspected the trunk. Inside the trunk, Deputy Reudelhuber discovered a black bag containing a clear vacuum sealed bag and containing approximately four hundred fifty-three (453) grams of an unidentified white crystal substance. In Deputy Reudelhuber's training and experience, the substance appeared to him to be methamphetamine. Reudelhuber also discovered a black case containing thirty (30) suboxone strips and a clear plastic bag containing nine (9) Oxycodone pills.

28. Deputy Reudelhuber placed both RIVERA and Newsome under arrest for possession of methamphetamine. Sergeant Barber cited RIVERA for careless and reckless driving and driving without a license. Both RIVERA and Newsome were transported to DCSO.

29. Sergeant Barber remained with the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851, and completed a tow/seizure sheet. Sergeant

Barber observed what appeared to be a live rifle round in a small storage area beneath the driver's side interior door handle, and advised Detective Bryant of this.

30. On the same date, DCSO executed a search warrant at 330 Elwin Circle, Lexington NC, where they located one thousand four hundred seventy-eight (1,478) grams of marijuana, one hundred twenty-eight (128) grams of an unidentified white crystal substance appearing to be methamphetamine, one hundred (100) grams of a crystal white substance appearing to be "crack" cocaine, a Norinco SKS 7.62 rifle, a Smith & Wesson M&P .380 pistol, and a North American Arms .22 revolver. No one was present at the residence when the search warrant was executed.

31. RIVERA was arrested for trafficking methamphetamine by possession, trafficking methamphetamine by transport, trafficking cocaine, manufacture methamphetamine, manufacture cocaine, possession with intent to schedule, manufacture and distribute Schedule I, possession with intent to sell, manufacture and distribute Schedule II, possession with intent to sell, manufacture and distribute Schedule III, possession with intent to sell, manufacture and distribute Schedule VI, possession of drug paraphernalia, maintaining a dwelling for violation of the Controlled Substance Act, and maintaining vehicle for violation of the Controlled Substance Act.

32. RIVERA was given a $500,000.00 bond and placed in custody in the Davidson County Jail.

33. RIVERA has previously been found guilty of possession with intent to manufacture, sell and distribute methamphetamine, possession with intent to sell and distribute marijuana, and possession with intent to manufacture, sell and distribute

Schedule IV in Randolph County District Court in Asheboro, North Carolina, on May 13, 2019. RIVERA was on probation for these charges on the date of his arrest in Davidson County. On September 19, 2018, in Guilford County Superior Court in High Point, North Carolina, RIVERA was found guilty of possession with intent to supply and distribute Schedule IV controlled substance (Clonazepam) and guilty to a lesser degree of attempt to traffic methamphetamine by possession of greater than twenty-eight (28) grams.

34. Detective Bryant took custody of the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851, on March 8, 2021, and maintained custody of the vehicle until it was transported to the DCSO secured storage lot by Clarke's Towing Company later that afternoon, following the arrest of RIVERA and Newsome. On April 6, 2021, DCSO transferred the vehicle to the United States Marshal Service. DEA adopted the seizure of the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851, and began administrative forfeiture proceedings.

35. On May 25, 2021, RIVERA filed an administrative claim for the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851. In his administrative claim, RIVERA stated that "I am the owner and I am exercising my 5th amendment right." He did not submit any documents in support of his claim, explaining, "I do not know where my paperwork is, I have been in jail since my arrest." The administrative forfeiture process for the 2016 Chevrolet Camaro SS convertible vehicle, VIN 1G1FH3D79G0183851 was terminated, and the seizure referred to the United States Attorney's Office for judicial forfeiture.

36. Based on the investigation, facts, and circumstances related above, there is probable cause to believe that the 2016 Chevrolet Camaro SS convertible, VIN 1G1FH3D79G0183851, was either obtained with proceeds of, or was used or intended to be used, in any manner or part, to commit or to facilitate the transportation, sale, receipt, possession, or concealment of a controlled substance or other property described in 21 U.S.C. § 881(a)(1), (2), or (9), and is therefore subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a).

This the 20 day of August, 2021.

Chaz Norman
Task Force Officer
Drug Enforcement Administration

11